OPINION
{¶ 1} Appellant Melissa McKinney appeals from the June 7, 2005, Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's four minor children to the Licking County Department of Job and Family Services [hereinafter agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant is the biological mother of Caitlynn McKinney (age 8, born June 22, 1996), Alexus Thornton (age 4, born November 4, 1999), Jaelynn Thornton (age 2, born November 30, 2001), and Jerry Lee Thornton, III (age 2, born November 30, 2001). James Hamler is the biological father of Caitlynn. Jerry Thornton, Jr. is the putative father of Alexus, Jaelynn and Jerry. Neither father has appealed the trial court's decision.
 {¶ 3} The agency first became involved with the family in 2002. Subsequently, new concerns arose and complaints were filed on August 5, 2003. The complaints alleged that appellant was without resources to care for her children, that appellant felt overwhelmed, was not taking prescribed medication for depression and had been in a violent relationship with Jerry Thornton, Jr. As a result of a hearing held that same day, a Magistrate's Order was issued which placed the children in the emergency shelter care of the agency.
 {¶ 4} An adjudicatory hearing was held on October 21, 2003. Based upon the agreement of the parties present, the evidence presented and the recommendation of the Guardian ad Litem, the Magistrate found that the four children were dependent children as alleged. At disposition, the children were placed in the temporary custody of the agency.
 {¶ 5} A case plan was developed. The case plan called for appellant to obtain and maintain a job, and maintain housing and utilities. Appellant was to complete a parenting skills program and seek counseling. Finally, the family was to become emotionally stable and not engage in physical or verbal abuse.
 {¶ 6} Subsequently, appellant made progress on her case plan and separated from Mr. Thornton. As a result, on August 26, 2004, the children were returned to appellant's legal custody, subject to the agency's protective supervision and the following conditions:
 {¶ 7} "1. Melissa McKinney shall allow the Agency reasonable access to the children;
 {¶ 8} "2. The mother shall not engage in any unsupervised contact with Jerry Thornton; additionally, the mother shall not allow the children any unsupervised contact with Jerry Thornton.
 {¶ 9} "3. The mother shall continue to attend individual counseling, the battered women's support group and the Agency's Parenting Program;
 {¶ 10} "4. The mother shall ensure the children's safety; if Mr. Thornton attempts to contact either the mother or the children, Melissa McKinney shall immediately contact the police, Mr. Thornton's parole officer, and the Agency;
 {¶ 11} "5. The mother shall maintain stable income and housing and appropriately provide for the needs of her children; and
 {¶ 12} "7. [sic] The mother shall use only Agency-approved daycare and babysitters for her children." Magistrate's Decision, Aug. 27, 2004.
 {¶ 13} However, shortly after the children were returned, appellant violated the protective supervision orders, ceased work on the case plan and renewed her relationship with Mr. Thornton. In addition, appellant was arrested for driving under suspension. Mr. Thornton was a passenger in the vehicle appellant was driving. As a result, appellant was found to have violated her probation terms from a 2000 conviction for theft and forgery. Both appellant and Mr. Thornton were arrested.[1] As an additional result, the children were removed from her custody on October 6, 2004.
 {¶ 14} An emergency shelter care hearing was held on October 7, 2004. Based upon the evidence presented and the incarceration of appellant and Mr. Thornton, the children were placed in the emergency shelter care of the agency. On October 22, 2004, an adjudicatory hearing was held. Based upon the evidence presented and the agreement of the parties, the children were found to be dependent children. The children were placed in the temporary custody of the agency.
 {¶ 15} On October 7, 2004, the agency filed a motion for permanent custody. The motion for permanent custody came on for hearing on January 5, 2005. The matter was heard by a Magistrate. The Magistrate found the following facts. At the time of the hearing, both appellant and Jerry were incarcerated. Appellant suffers from bipolar disorder. Appellant has never been able to maintain employment for any extended period and has never been financially responsible for the children. Appellant was emotionally and financially dependent on Mr. Thornton. Jerry Thornton, Jr. has a serious criminal history and an ugly history of domestic violence against appellant. Although appellant testified that she had finally gained insight into her emotional dependence, appellant's lack of financial and emotional independence, her lack of any significant employment history, and her tendency to become overwhelmed as a single parent, remained enormous problems. The Magistrate concluded that appellant was not likely to successfully complete the case plan and become a strong, independent parent within the foreseeable future. The Magistrate concluded that appellant will struggle to simply take care of herself.
 {¶ 16} Accordingly, the Magistrate found that appellant was incapable of meeting the children's needs now or in the foreseeable future. After stating that all of the factors of R.C. 2151.414 had been considered, the Magistrate found that:
 {¶ 17} "(a) the children cannot and should not be placed with any parent within a reasonable period of time.
 {¶ 18} "(b) The childrens' need for a permanently secure placement is vital and cannot be achieved without granting permanent custody to the Agency.
 {¶ 19} "(c) The mother and fathers have failed continuously and repeatedly to remedy the conditions which existed at the time of the children's removal from their home, notwithstanding reasonable case planning and diligent efforts by the Agency to assist the parents. The Magistrate finds that the Agency made reasonable and diligent efforts to prevent continued removal.
 {¶ 20} "(d) These children have spent more than 12 of the last 22 months in foster care." Magistrate's Decision, filed March 29, 2005.
 {¶ 21} In addition, the Magistrate found that it was in the best interest of the children to permanently terminate all parental rights and to place the children in the permanent care and custody of the Agency.
 {¶ 22} Appellant filed objections to the Magistrate's Decision on May 13, 2005. Upon consideration of those objections, the trial court overruled the objections, approved the Magistrate's Decision and ordered the Magistrate's Decision be entered of record. Judgment Entry, filed June 7, 2005.
 {¶ 23} It is from the June 7, 2005, grant of permanent custody of the four minor children to the agency that appellant appeals, raising the following, sole assignment of error:
 {¶ 24} "THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE McKINNEY THORNTON CHILDREN TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, BECAUSE ITS FINDING THAT THE McKINNEY THORNTON CHILDREN COULD NOT BE PLACED WITH THEIR MOTHER, MELISSA McKINNEY, WITHIN A REASONABLE AMOUNT OF TIME WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} Appellant appeals from the trial court's grant of permanent custody to the agency. In the sole assignment of error, appellant contends that the trial court's underlying finding that the children could not be placed with appellant within a reasonable period of time was against the manifest weight of the evidence. We disagree.
 {¶ 26} Ohio Revised Code Section 2151.414(B)(1), addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows, in relevant part:
 {¶ 27} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 28} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
. . .
 {¶ 29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999."
 {¶ 30} In this case, the trial court found that the children had been in foster care for more than 12 of the last 22 months and that the children could not and should not be placed with appellant within a reasonable period of time. These findings are alternate grounds upon which to base the grant of permanent custody. R.C. 2151.414(B)(1)(a) and (d) respectively.
 {¶ 31} Appellant does not appeal the trial court's finding that the children were in the custody of the agency for 12 or more of the last 22 months. Such a finding is enough to satisfy the requirements of R.C.2151.414(B)(1). See In re Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101.
 {¶ 32} Accordingly, this court need not address appellant's issue on its merits because even if appellant were correct, it would not justify a reversal of the trial court's decision. However, when this court reviews the merits of the issue raised by appellant, the trial court's finding is sufficiently supported by the record.
 {¶ 33} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. See R.C. 2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
. . .
 {¶ 35} "(16) Any other factors the court considers relevant ."
 {¶ 36} A trial court may base its decision that a child cannot or should not be placed with a parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 37} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118; Inre: Adoption of Holcomb (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.
 {¶ 38} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also, C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Schiebel, 55 Ohio St.3d at 74, 564 N.E.2d 54.
 {¶ 39} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law."Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 40} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In re: Christian,
Athens App. No. 04CA10, 2004-Ohio-3146; In re: C.W., Montgomery App. No. 20140, 2004-Ohio-2040.
 {¶ 41} In this case, the trial court found that appellant had failed continuously and repeatedly to remedy the conditions which existed at the time of the children's removal from their home, notwithstanding reasonable case planning and diligent efforts by the agency to assist appellant. R.C. 2151.414(E)(1). We find that this finding is supported by competent, credible evidence.
 {¶ 42} At the time of the removal of the children from appellant's home, appellant had recently been involved in a long term, violent domestic relationship with Jerry Thornton Jr. Further, appellant was unable to support the children financially and was overwhelmed by the stress of raising four children. In addition, appellant was to take medication and was not taking it.
 {¶ 43} Separation from Mr. Thornton was essential to remedying the problems of appellant. At one point, appellant had separated from Mr. Thornton and the children had been returned to appellant. However, one of the conditions was that appellant not have contact with Mr. Thornton. In conjunction with that condition, appellant was to contact the police and others if Mr. Thornton attempted any contact. The trial court, in its entry approving the Magistrate's Decision recommending permanent custody, made additional findings regarding Jerry Thornton, Jr.'s violent nature. The trial court found that Mr. Thornton had testified that "she'd do things and I'd get jealous and I'd just beat her up, you know?" and that Mr. Thornton had held a gun to appellant's neck on one occasion. The trial court also found that appellant had admitted to a social worker that neither she nor her children were safe with Mr. Thornton.
 {¶ 44} However, appellant admitted that shortly after the children were returned, appellant had contact with Mr. Thornton. Appellant picked up Mr. Thornton from out of town, simply because she wanted to. Appellant not only picked him up but continued her relationship with him and continued seeing him every day thereafter. Appellant admitted that she made no effort to contact the police when Mr. Thornton initiated contact with her.
 {¶ 45} Appellant suffers from bipolar disorder. Appellant had a prescription for medication. However, appellant could not afford to fill the prescription and was not eligible for governmental assistance. Although appellant did seek financial help from private resources, she was unable to take the medication until she was incarcerated. At the time of the hearing, appellant was taking medication provided by the jail.
 {¶ 46} In addition, appellant was subpoenaed to testify regarding the domestic violence committed by Mr. Thornton against appellant. However, Mr. Thornton told appellant not to go so appellant ignored the subpoena and failed to appear at the grand jury hearing.
 {¶ 47} Appellant did complete one parenting course. However, appellant failed to enroll in the agency's required parenting course. According to appellant, this was because she understood that someone from the agency would call to set up the class. However, according to the agency, appellant was to call and make arrangements for attendance at the class.
 {¶ 48} Appellant did attend counseling. Appellant reached the point where the counselor told her that she need only set up an appointment if appellant needed help. However, appellant admitted that she was still depressed and could use ongoing counseling. Appellant did not schedule counseling sessions. Further, appellant felt that domestic violence counseling was a waste of her time.
 {¶ 49} Appellant has never maintained employment for an extended period of time and never been financially responsible for her children. At one point, appellant had a job but she stopped going to work when Mr. Thornton told her to stop. In addition, appellant is not eligible for Medicaid or Welfare because she did not show up for several appointments and was sanctioned.
 {¶ 50} In addition, due to her contact with Mr. Thornton, appellant violated her probation and was given a six-month jail sentence. In the face of her incarceration and the potential loss of her children, appellant stated on the record that she would continue to have some level of contact with Mr. Thornton because she does "not want to keep [her] children away from their father whether it be supervised visits or not." Tr. 24-27.
 {¶ 51} At the hearing, the social worker assigned to the family detailed the many services the agency provided to appellant, including steps to protect her from Mr. Thornton. The social worker concluded that appellant was given "all the tools, all the safeguards, and chose not to use them." Tr. 58-59.
 {¶ 52} The children's guardian ad litem prepared a report, filed January 5, 2005. The guardian ad litem felt that appellant was given ample opportunity to remedy the situation which brought appellant before the court. She felt that further opportunities would yield the same result. The guardian ad litem recommended that permanent custody be granted to the agency unless there was a guarantee that appellant would have no contact with Mr. Thornton and that appellant would adequately provide for the children. The guardian ad litem's recommendation was primarily based upon the level of violence exerted by Mr. Thornton towards appellant and a fear that Mr. Thornton would severely or fatally injure the children.
 {¶ 53} Admittedly, at the final hearing in this case, appellant stated that she had finally figured out that she was an emotionally dependent person and she now understood that she needed help. Appellant stated that she did not intend to return to her relationship with Mr. Thornton. Further, this court recognizes the dangerous situation appellant faced in regard to Mr. Thornton. However, we agree with the trial court that "[n]o matter how well intentioned [appellant] argues that she is (as of the date of the permanent custody hearing), these children cannot continue to wait on her as she attempts to struggle to get her own personal life together." Judgment Entry, June 7, 2005.
 {¶ 54} For the foregoing reasons, this court concludes that the trial court's finding that the children cannot be placed with appellant within a reasonable time is supported by sufficient evidence. There is competent, credible evidence that appellant failed to remedy the problems that caused the children to be placed outside the children's home, despite reasonable case planning and diligent efforts by the agency to assist appellant and that appellant will be unable to remedy these problems within a reasonable period of time.
 {¶ 55} Accordingly, appellant's sole assignment of error is overruled.
 {¶ 56} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Boggins, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Mr. Thornton was arrested on a warrant.