DECISION AND JUDGMENT ENTRY
{¶ 1} Teresa Stapleton appeals the trial court's decision granting Lawrence County Department of Job and Family Services, Children Services Division (LCCS), permanent custody of her daughter, Michelle Gallion, born September 10, 1996. She asserts that the record does not contain clear and convincing evidence to support the trial court's findings that the child's best interests would be served by awarding LCCS permanent custody and that the child could not or should not be placed with either parent within a reasonable time.
 {¶ 2} The record contains abundant clear and convincing evidence to support the trial court's decision. Both the mother and the father have a long history of alcohol abuse that renders them unable to properly parent their child. Neither parent has taken sufficient steps to stop abusing alcohol so as to enable them to properly parent their child. This evidence shows that the child cannot or should not be returned to either parent within a reasonable time. Additionally, the evidence shows that the child's best interests would be served by awarding LCCS permanent custody. Accordingly, we affirm the trial court's judgment.
 {¶ 3} LCCS has been involved in the child's life since August of 2000. Both parents have a long history of alcohol abuse. The mother has a history of an abusive relationship and an inability to maintain a stable, safe, and permanent home. LCCS has offered the mother two prior case plans for reunification with her child and she did not comply with either. In 2003, the father completed a case plan and he received custody of the child.
 {¶ 4} In the summer of 2004, while the child was visiting with her mother, LCCS received a complaint that the child was walking along a roadway at 11:30 at night, yelling for her mother. An LCCS caseworker eventually located both the mother and the child hiding in a ditch in the woods. The mother was intoxicated.
 {¶ 5} Late in the night on June 5, 2005, the child called 911 to report that her father and his girlfriend were intoxicated and that she was frightened. Law enforcement officials and an LCCS caseworker responded and found the father obviously intoxicated and the house unsuitable for the child. The caseworker did not see adequate food for the child and the child could not locate any clean clothes to take with her. The father commented that he no longer wanted the child and that he would like for her to be adopted. The father was arrested and charged with child endangerment.
 {¶ 6} On June 6, 2005, LCCS filed a motion for permanent custody of the child and the court awarded LCCS emergency custody of the child.
 {¶ 7} On July 8, 2005, the court adjudicated the child a dependent and neglected child.
 {¶ 8} At the permanent custody hearing, one of the child's teachers stated that the child told her she was unhappy when in her father's custody. The teacher noticed a decline in the child's performance and attitude when she was taken out of the foster home and returned to her father.
 {¶ 9} Integrated Services for Youth therapist, Bilreka Ferguson, testified that the child viewed the permanent custody hearing and "not being placed in [the] custody of her biological family as being the only way for her to have any chance of a real life." The child has stated that she is afraid of where her next meal will come from, of her father's temper, and of her mother's ability to make her feel safe. She stated that "it was not unusual for * * * [the mother] to have sex with men[,] pass out[,] and then [the child] be left alone with the men that [the mother] had been with. And [the child] told me of the fear that she had about those men" and that she would hide from them.
 {¶ 10} Ferguson stated that the child is "happy," "content," and "safe," while in the foster family's care. The child told Ferguson that she does not think her father likes her. The child stated that she knows her mother loves her, "but she can't raise me and that's okay." Ferguson heard the mother state that "she loved [the child] so much that she had to give her up." Ferguson testified that she believes returning the child to her parents will adversely affect the child's psychological well-being.
 {¶ 11} LCCS caseworker Samantha Fouse[1] testified that the current placement is the child's third time in LCCS's custody. She stated that since the child's birth, LCCS has received nineteen referrals, although some were unsubstantiated. Fouse explained that the mother's problems centered around her alcohol abuse. LCCS recommended inpatient treatment, but she refused it. Fouse stated that when LCCS first assumed temporary custody of the child, most of the child's teeth were rotting out. Fouse testified that the child lived in a neglectful environment for "a large part of her life" before LCCS received temporary custody. Fouse did not believe that reunifying the child with the parents was possible. She stated that she did not "see anything changing here in the next five months that's going to remedy the last nine years." She does not believe that the parents could do anything within a reasonable period of time to re-gain custody of the child.
 {¶ 12} Fouse also testified regarding the child's best interests:
"I think [the child] should be able to have a life where she knows she's loved and supported. And where she has some, where she has a little more opportunity and where she's not afraid when she goes to bed at night. Where she's not afraid of a man who[`s] intoxicated being in the home and she's not afraid to go to sleep or afraid of what might happen to her if her mom's not around. I'd like for her to have a life where you know it's not filled with fear and where her medical needs are taken care of and her emotional needs."
 {¶ 13} Fouse stated that she does not believe the mother can have the child within a reasonable period of time: "[The mother's substance abuse] has been a long-standing problem and she has been offered services. She's been offered transportation. * * * * [I]npatient counseling was recommended * * *. [S]he could have went to a[n] inpatient program and * * * when you do that you have a roof over your head. You don't have to worry about getting evicted. You don't have to worry about a lot of the things that she has had to deal with and she could have done that and she could have done that a long time ago." Fouse noted that in 2002, the mother was facing losing the child to LCCS's permanent custody, and she did not comply with the case plan then. Instead, the father received custody of the child.
 {¶ 14} Fouse stated that the child told her that her brother sexually abused her and that she had witnessed her mother engaging in sexual activity in her presence.
 {¶ 15} LCCS's attorney asked her if she thought the mother, if she were to remain alcohol free for six months, would be able to receive custody of the child, and the caseworker stated no. LCCS already has offered her "many different services" and has repeatedly offered her drug and alcohol counseling. The mother has a pattern of alcohol abuse, poor choices, and not providing a stable home. The mother did not acknowledge the child's sexual abuse allegations that her brother allegedly committed. The caseworker stated that she has not seen any documentation that the mother "has been through detox" or that she has "been clean and sober for a long period of time. Or that she's maintained a residence for a long period of time. And * * * her current boyfriend has a DUI and has a suspended license and they walk to visitation together. Working on your own dependence is difficult enough but if you have other people in you[r] family or in your household that are also dealing with those same or similar issues, it's going to be even more difficult." She would not find it encouraging that the mother has been in the same residence for two months.
 {¶ 16} The mother testified that she has been living in a trailer with her boyfriend for about two months. She no longer has contact with the man she had the prior domestic violence problems with, and she claims that her current boyfriend is not violent. She stated that she has "slowed up a lot" on her drinking. She has talked to counselors and attends AA twice a week; however, she just started attending AA two weeks before the November 2005 permanent custody hearing date. She stated that she would comply with a case plan, if LCCS offered her one, but admits that she did not comply with previous case plans that addressed the same issues.
 {¶ 17} The court interviewed the child. When the judge asked her what she liked most about living with either her mother or her father, she had no positive response. She stated that she likes living with her foster parent because "[s]he's nice, she loves me and she takes care of me." She does not call her names, and she does not call her "ugly."
 {¶ 18} The guardian ad litem filed three reports. In his first report on August 15, 2005, he noted that in a prior proceeding, the mother had "been ruled to be unworthy to be the custodian of the child because of her alcoholism and because the child had been sexually molested by one of the mother's paramours while in her custody. * * * * The absence of any apparent change in the mother's condition since the prior proceeding leads me to reject her as a possible custodian." The guardian found the situation with the father to present a close question. He ultimately believed that LCCS should afford the father a chance to remedy his parental deficiencies and as of August 15, 2005, would not recommend that the court grant LCCS permanent custody.
 {¶ 19} On October 20, 2005, the guardian filed a supplemental report. In it, he noted that he previously stated that he would not recommend permanent custody because the events of June 5, 2005, viewed in isolation, did not warrant permanent custody. He since has uncovered additional evidence that led him to recommend permanent custody. "[I]t appeared that the sanitary conditions in [the father's] home are woefully substandard with roaches and ants persistently present on the premises and in the foods given to [the child]. This is coupled with the father's drinking, which provokes angry outbursts complete with property destruction and verbally abusive behavior. Apparently, the events of June [5], 2005 were only the most recent manifestation of a recurring pattern that has instilled fear in [the child] and has led her to reject her father. (It is clear from talking with her that she is sincere and certainly understands the consequences of her decision.)"
 {¶ 20} The guardian further stated:
"Michelle loves her mother and her mother loves her, and were there any assurance that the mother could resolve her drinking problem, her mother might be a candidate to have custody of Michelle. However, the mother has a consistent pattern of alcohol abuse leading to neglect that extraordinary evidence of improvement would be required to have such assurances. We do not have that evidence; in fact the failure of the mother to appear for the court-ordered evaluation strongly suggests that her pattern of neglect continues. That, combined with her history, is fatal to any contention that she could be able to take custody of [the child] within a reasonable time."
 {¶ 21} In the guardian's December 13, 2005 final report, he concluded that awarding LCCS permanent custody was in the child's best interests. The guardian noted that the mother and the child share a loving relationship but further noted that:
"[T]he child] recognizes that her mother will never be able to provide a strong and stable home for her. Given the mother's history of substance abuse and the past history of the mother's casual liaisons with unknown men, this belief is clearly reasonable. Likewise, nothing in the mother's recent progress is sufficiently dramatic to outweigh the mother's florid transgressions. Indeed, the mother's alleged progress was not sufficient to cause her to attend a psychological evaluation ordered by the Court."
 {¶ 22} Regarding the father, the guardian stated:
"[T]he accumulated actions of the father have created an irreparable breach of any bond between [the child] and her father. [The child] looks upon the prospect of reunification with her father with horror and trepidation. I do not know that the father can or would do anything that would have a realistic chance of healing that breach within a reasonable time."
 {¶ 23} On December 29, 2005, the trial court awarded LCCS permanent custody. The court found that the child cannot be placed and should not be placed with either parent within a reasonable time and that the child's best interests would be served by awarding LCCS permanent custody. The court stated:
"The Court has considered the wishes of the child as expressed directly by the child and through the guardian ad litem with due regard for the maturity of the child. The psychological evaluations and the attitudes of the parties indicate issues impacting any ability for this family to reunify. These issues are of such a nature that the Court concludes additional effort at reunification will not accomplish reunification within a reasonable period of time.
* * * * A case plan for reunification is not in the best interest of the child and reasonable efforts for reunification is found not necessary in this case. The Court finds that the mother and father have been offered two separate Court ordered case plans for reunification which focused upon the same issues that formed the basis for the current finding of the child being a dependent and neglected child. Permanent custody became an issue of consideration in both Court cases. The mother had been offered a safety plan prior to the Court ordered case plans.
The mother has been unwilling and unable to complete the reunification plans ordered in the prior Children Services cases. The father though having completed the prior case plans has been unable to provide and maintain a stable environment, the supervision necessary to protect the child's safety and the child's physical and emotional well being. The child is in need of a legally secure placement and that type of placement cannot be achieved without a grant of permanent custody to the agency.
The child's interaction and interrelationship with the parents, foster care providers and school personnel indicate the necessity of this permanent custody placement. [The child] is likely to be adopted by a family able to provide a stable, positive and nurturing environment able to meeting (sic) her needs and best interest."
 {¶ 24} The court further found:
"[U]nder two prior placements of the child outside of the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside of the child's home. The Court has considered the parental utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. Further, the parents have demonstrated a lack of commitment toward the child by showing an unwillingness to provide an adequate permanent home for the child. The parents have placed the child at substantial risk of harm due to alcohol or drug abuse and have rejected treatment as offered or recommended by the agency as part of the dispositional orders issued. The parents have been unwilling or unable to prevent the child suffering from emotional or mental neglect if not emotional abuse."
 {¶ 25} The mother timely appealed the trial court's judgment and assigns the following error:
 {¶ 26} I. THE TRIAL COURT ERRED IN ITS DECISION TO TERMINATE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO THE
LAWRENCE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN SERVICES DIVISIONS AS SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH EITHER OF THE CHILD'S PARENTS WITHIN A REASONABLE TIME AND SHOULD NOT BE PLACED WITH EITHER PARENT.
 {¶ 27} In her sole assignment of error, the mother argues that the trial court erred by granting LCCS permanent custody. In particular, she contends that the record does not contain clear and convincing evidence to support the court's findings that awarding LCCS permanent custody is in the child's best interests and that the child cannot or should not be placed with either parent within a reasonable time.
 {¶ 28} With respect to the child's best interests, the mother asserts that the court should have discounted the child's wishes because she was only eight years old, and instead, should have relied upon the guardian's August 15, 2005 report in which he relayed that he did not believe the court should award LCCS permanent custody. The mother further argues that the evidence does not show that the child needs a legally secure placement that cannot be achieved without a grant of permanent custody. The mother now lives in a three bedroom trailer with her new boyfriend, and the father's home is suitable. The mother contends that either one of these homes is a legally secure placement. The mother further asserts that she and the child have a loving relationship and that she has made progress in addressing her alcohol abuse issues.
 {¶ 29} Regarding the court's finding that the child cannot or should not be placed with either parent within a reasonable time, the mother argues that the trial court should not have found that the parents failed continuously and repeatedly to substantially remedy the conditions causing the child's removal. She asserts that she has left the abusive relationship, she has a new boyfriend, she lives with him in a three bedroom trailer, and she attends counseling and AA meetings.
 {¶ 30} The mother also asserts that the trial court incorrectly found that the parents demonstrated a lack of commitment toward the child by showing an unwillingness to provide an adequate permanent home for the child. The mother contends that while she may have moved "a couple" of times before, she now has a stable permanent residence.
 {¶ 31} The mother additionally argues that the court improperly found that the parents have been unwilling or unable to prevent the child from suffering emotional or mental neglect if not emotional abuse. She contends that this is mostly a concern for the father and any neglect on her part "was unintentional."
 {¶ 32} A trial court may not grant a permanent custody motion unless clear and convincing evidence supports it. "Clear and convincing evidence" is:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04,495 N.E.2d 23; see, also, State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 33} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the record shows some competent, credible evidence supporting the trial court's decision, we must affirm the court's decision, regardless of the weight we might have chosen to assign the evidence. See In reM.E., Cuyahoga App. No. 86274, 2006-Ohio-1837. Thus, our review of a trial court's permanent custody decision is deferential. SeeIn re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17.
 {¶ 34} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained inSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273:
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
Additionally, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In reChristian, Athens App. No. 04CA10, 2004-Ohio-3146; In re C.W.,
Montgomery App. No. 20140, 2003-Ohio-2040.
 {¶ 35} While a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children, the parent's rights are not absolute. Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham
(1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In reR.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands it.
 {¶ 36} When a children services agency files for permanent custody as the initial disposition, the trial court may terminate parental rights and award the children services agency permanent custody if the court determines that the child cannot be placed with either of the child's parents within a reasonable time and that permanent custody is in the child's best interests. See R.C.2151.353(A)(4). Before the court may award the children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 37} When considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
(A) To provide for the care, protection, and mental and physical development of children * * *;
* * *
(C) To achieve the foregoing purpose , whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
R.C. 2151.01.
 {¶ 38} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.
 {¶ 39} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C.2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
* * *
(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
* * *
(16) Any other factor the court considers relevant.
 {¶ 40} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See, e.g., In re West, Athens 05CA4,2005-Ohio-2978, citing In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738.
 {¶ 41} In the case at bar, substantial credible and competent evidence supports the trial court's decision to award LCCS permanent custody, and specifically, its findings that awarding LCCS would serve the child's best interests and that the child cannot or should not be placed with either parent within a reasonable time.
 {¶ 42} First, with respect to the child's interactions and interrelationships, the evidence shows that the child loves her mother but does not feel that her mother can care for her. She does not feel safe and secure while in her mother's care. The child feels that her father does not love her and she also does not feel safe and secure in his care. The child's teacher testified that the child stated she was unhappy while in her father's custody. In contrast, the child stated that she likes her foster parent, and the teacher noticed that the child appeared much happier when in the foster parent's care. The child interacts well with the foster parent and with the other children in the foster home.
 {¶ 43} Second, regarding the child's wishes, the child stated that she wants to live with her foster parent and does not want to live with her father. The child stated that she does not think her mother can care for her properly. The guardian recommended that the trial court award LCCS permanent custody.
 {¶ 44} We disagree with the mother that the court should have disregarded the child's wishes due to her age. As we noted earlier, the choice between credible witnesses rests with the trial court. Furthermore, LCCS presented evidence showing that the child is a mature nine-year old who understood the implications of the permanent custody proceeding.
 {¶ 45} We also disagree with the mother that the court should have accepted the guardian's first report recommending that the court give the father a chance. The guardian later acquired evidence that led him to conclude that any reunification attempt with the father would be fruitless, given the irreparable bond between him and his daughter.
 {¶ 46} Third, with respect to the child's custodial history, the evidence shows that LCCS first became involved in the child's life in 2000, when she was approximately four years old. The child has been in and out of LCCS's temporary custody two times before it filed the current permanent custody motion. The child has not had a stable, permanent home for more than one-half of her life.
 {¶ 47} Fourth, regarding the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, the evidence shows that the child flourishes while in the foster parent's care and that she, like all children, benefits from a legally secure permanent placement. The mother's history shows that she has not been able to provide a secure and permanent home for the child. While she is attempting to maintain a stable residence (as of the November hearing date, she had lived with a man in the same home for about two months), her history suggests that she will not be able to continue to provide a secure and stable residence for her child in the foreseeable future. Her current efforts may be admirable, but dilatory. Furthermore, the father abuses alcohol and his daughter does not feel safe in his care. LCCS caseworkers observed roaches in his home and little food for the child to eat.
 {¶ 48} The trial court did not make any finding regarding the fifth best interest factor. Therefore, we will not address this factor.
 {¶ 49} The record also contains substantial credible and competent evidence that the child cannot or should not be returned to either parent within a reasonable time. The evidence shows that the parents have continuously and repeatedly failed to remedy the conditions that led to the child's removal. The parents' alcohol abuse is the primary reason for the child's removal. Their alcohol abuse renders them unable to properly provide for the child's safety, well-being, and nourishment. LCCS has offered them alcohol abuse counseling in prior case plans but neither apparently has had success in controlling their alcohol abuse. Neither has chosen to place the child's interests above the interest in alcohol. Even faced with losing her child a third time, the most the mother can do is to cut back on her drinking instead of completely abstaining. The father admits he still drinks every day. If the parents cannot stay sober, it is difficult to imagine how the child could ever feel secure in their care. While the mother may currently attend AA meetings, she started just in November of 2005 and has not demonstrated an ability to remain sober.
 {¶ 50} Moreover, the parents' alcohol abuse demonstrates a lack of commitment to their child. While they state that they love their child, they have not been able to control their drinking so as to be able to properly care for her. Each claims that this, the third time, will be different. However, their past actions are a better indicator of their future, and in the past, they have not been able to control their alcohol abuse so as to properly parent the child. This child, who has been in and out of her parents' care for over four years now, deserves more than to be placed into an environment where she will feel on edge if her parents drink and where there is no guarantee that the parents will remain alcohol-free, or at least refrain from drinking to a level of intoxication that renders them unable to properly parent the child.
 {¶ 51} These two factors support the court's finding that the child cannot or should not be placed with either parent within a reasonable time. Thus, we will not address, in detail, the mother's remaining arguments regarding the R.C. 2151.414(E) factors. Instead, we simply note that the record contains some competent, credible evidence to support the court's findings that (1) the parents have placed the child at substantial risk of harm due to alcohol abuse and have rejected treatment as LCCS offered or as part of the court's dispositional orders, and (2) the parents have been unwilling or unable to prevent the child from suffering emotional or mental neglect.
 {¶ 52} Accordingly, we overrule the mother's sole assignment of error and affirm the court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court — Juvenile Division to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, P.J., and Abele, J.: Concur in Judgment Only.
[1] The trial transcript contains two different spellings of this witness's last name: Fouse and Foose. We use the first spelling.