DECISION AND JUDGMENT ENTRY
{¶ 1} Candy and Charles Christian appeal the court's adjudication of their infant daughter, Emily, as a dependent child and contend that the court's finding is not supported by the evidence. We reject the Christians' contention because the record reveals some competent, credible evidence to support the trial court's decision. The Christians were living in a motel room at the time of Emily's birth and, although Candy receives social security income, Charles refuses to seek full-time employment despite being able to work. Charles has been sanctioned by the Ohio Department of Jobs and Family Services, losing his food stamp benefits several times for his refusal to work. Moreover, Charles admitted smoking marijuana near Candy while she was pregnant with Emily. Finally, Candy acted inappropriately towards Emily after her birth, including failing to feed her for several hours. Therefore, we affirm the trial court's finding that Emily is a dependent child.
 {¶ 2} On November 24, 2003, Candy gave birth to Emily at O'Bleness Hospital ("O'Bleness"). Two days after her birth, Athens County Children Services ("ACCS") obtained emergency custody of Emily. ACCS later filed a complaint in the Athens County Court of Common Pleas, Juvenile Division, alleging that Emily was a neglected and dependent child and seeking temporary custody.
 {¶ 3} In its complaint, ACCS asserted that a physician delivered Emily by caesarean section due to a low fetal heart rate. The doctor ordered a blood screen to determine the cause of Emily's low heart rate and discovered that Candy had marijuana in her system. Additionally, the complaint alleged that Candy placed an adult pillow in Emily's bassinet and fanned Emily while she was undressed in the bassinet. ACCS noted that the court previously awarded it permanent custody of Emily's three siblings, and that the Christians have a history of substance abuse, domestic violence, and an unstable home environment. ACCS later amended its complaint and sought permanent custody of Emily.
 {¶ 4} Following a hearing, the court adjudicated Emily a dependent child and continued the matter for a dispositional hearing. The Christians appealed the court's dependency finding, but ACCS moved to dismiss the appeal on the ground that the court's order was not final and appealable. Thereafter, the juvenile court held a dispositional hearing and awarded permanent custody of Emily to ACCS. We concluded that the Christians' notice of appeal was filed prematurely because the court's judgment did not become a final appealable order until the court journalized its entry granting permanent custody of Emily. Thus, we denied ACCS's motion to dismiss because there is now a final appealable order. See In re Murray (1990), 52 Ohio St.3d 155, 159, 556 N.E.2d 1169
(stating that an order is a final appealable order only after both an adjudication and disposition).
 {¶ 5} The Christians assign the following error: "The adjudication of Emily as a dependent child by the juvenile court is not supported by clear and convincing evidence and is against the manifest weight of the evidence."
The Christians do not directly challenge the juvenile court's dispositional order granting custody of Emily to ACCS. Rather, they focus their argument only on the court's determination that Emily is a dependent child.
 {¶ 6} A court's finding that a child is dependent must be supported by clear and convincing evidence. R.C. 2151.35(A). The Supreme Court of Ohio has defined "clear and convincing evidence" as: "* * * the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Haynes
(1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23; see, also, State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 7} When an appellate court examines a trial court's judgment to determine whether that judgment is based upon clear and convincing evidence, the reviewing court must "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74,564 N.E.2d 54. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id. Furthermore, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Deference to the trial court on matters of credibility is "crucial" in cases involving children, "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.
 {¶ 8} R.C. 2151.04(C) defines a dependent child as a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." When a court considers whether a child is dependent, the focus is not directly upon the conduct of the parents, but upon the child's condition and environment. See In re Pitts (1987), 38 Ohio App.3d 1, 525 N.E.2d 814. The parent's conduct may become relevant in a dependency determination "insofar as that parent's conduct forms a part of the environment of [the] child. As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." In re Burrell (1979),58 Ohio St.2d 37, 39, 388 N.E.2d 738.
 {¶ 9} In adjudicating Emily a dependent child, the juvenile court made the following findings: "* * * Athens County Children Services learned of Emily Christian at or near the time of her birth on November 24, 2003. She was born at the local hospital and diagnosed with fetal distress with an abnormally low heartbeat. Mother, Candy Christian had presented for delivery with marijuana in her system. Following delivery, hospital staff took note of at least two issues of concern regarding mother's decision-making regarding the baby. Mother had failed to feed the baby for several hours during a morning feeding session, a fact mother admitted at the hospital but denied at hearing. Additionally, mother had placed an adult pillow in the baby's hospital crib, contrary to recognized standards of care. ACCSA has substantial background and history regarding these parents and the issues that led to prior removals of children and prior permanent custody orders. Those issues remain present, including drug use, unstable employment, unstable income, and sporadic living arrangements. At the time of Emily's birth, Charles and Candy were living at motels with Charles trying to "work off" the rent. Their financial picture is difficult to understand Mother receives SSI and father hasn't worked for a payroll employer for a couple of years. Mother says she is sometimes given money by a male friend. Mr. Christian has been sanctioned repeatedly by the Ohio Department of Jobs and Family Services. It is clear that the conditions and environment are such as to warrant the state, in the interests of the child, in assuming the child's guardianship. * * *" The Christians contend that the court's findings are not supported by the record for several reasons.
 {¶ 10} First, the Christians argue that there is no evidence that Candy's alleged marijuana use caused Emily's fetal distress. The Christians rely on Nurse Gerlene Canter's testimony that fetal distress can be caused by numerous factors. Notably, the juvenile court never explicitly found that Candy's marijuana use caused the fetal distress. Rather, the court simply acknowledged that Emily suffered distress at the time of her birth and that Candy had marijuana in her system.
 {¶ 11} Next, the Christians argue that Nurse Canter's testimony was insufficient to prove that Candy had marijuana in her system at the time of Emily's birth. The Christians note that the State failed to introduce Candy's medical records, including a report labeled "urine toxicology panel," into evidence and did not present any testimony as to the significance of any of the findings presented by the urine screen.
 {¶ 12} Assuming without finding that the court erred in considering the evidence of Candy's positive marijuana screen, we conclude that such error was harmless. Even if Candy truthfully testified that she did not smoke marijuana while pregnant, she admitted that Charles and his family smoked marijuana in her presence on the day she gave birth to Emily. This behavior reveals Candy's unwillingness to remove herself and Emily from a harmful situation, as well as Charles' continued drug use and failure to protect Emily.
 {¶ 13} Furthermore, the court did not rely exclusively, or even primarily, on Candy's marijuana use as a basis for finding that Emily is a dependent child. Instead, the court examined many aspects of the Christians' environment and Candy's behavior towards Emily after her birth. Even without considering Candy's alleged marijuana use, there is still sufficient evidence to support the court's finding that Emily is a dependent child.
 {¶ 14} The Christians also refute Nurse Canter's claim that Candy failed to feed Emily for several hours. Candy testified that she did feed Emily as required. As the trier of fact, the trial court was free to disbelieve Candy and to credit Nurse Canter's testimony.
 {¶ 15} Next, the Christians argue that Candy never harmed Emily by placing an adult pillow in her bassinet since Emily was in her arms at the time. While ACCS did not dispute Candy's claim, the court nonetheless found that this behavior is in contravention of "recognized standards of care." Moreover, Candy never provided a reasonable explanation for this behavior. We find no error in the court's consideration of this evidence in concluding that Emily is a dependent child.
 {¶ 16} The Christians contend that ACCS did not present sufficient evidence to support the court's finding that "ACCS has substantial background and history regarding these parents and the issues that led to the prior removals of children and prior permanent custody orders." The record reveals that the Christians have four children besides Emily.[1]
The court awarded permanent custody of three of these children to ACCS in January 2003 and the Christians' oldest daughter has been in the custody of a former relative for nine and a half years. According to a caseworker at ACCS, the Christians lost custody of their older children because of substance abuse, housing instability, lack of employment, and the parents' unwillingness to rectify these problems. The caseworker testified that the same problems remain today. Additionally, the Christians admitted that they moved frequently between two motels for a period of at least three months before and at the time of Emily's birth. Charles admitted marijuana use and both parents seemed to feel that this drug usage was insignificant, and Charles acknowledged that he chose not to work on a regular basis. Therefore, the court's finding is supported by the record.
 {¶ 17} Lastly, the Christians contend that they have an acceptable residence and adequate resources to support Emily. ACCS acknowledged that the Christians' motel room was clean and safe; however, ACCS was concerned that their living situation was unstable. In fact, the Christians acknowledged that Charles either worked at the motel to pay their rent or they paid for their room on a day-to-day basis, and that they had to vacate if there was no work for Charles or they did not have the money to pay that day. On at least one occasion, the Christians had to remain in their vehicle for several hours until they could locate a friend who allowed them to stay with him. Although the Christians had obtained an apartment by the time of the second adjudication hearing date, given their past history and financial situation it would not be unreasonable for the trial court to have doubts about their ability to maintain that residence.
 {¶ 18} The court noted that the Christians' "financial picture is difficult to understand" Candy receives SSI and testified that she works some odd jobs and is given money by a male friend with no expectation of repayment. Although Charles acknowledged that he is capable of working, he has not held a full-time job in two years. Instead, he worked for a few months at the motels where he and Candy were staying in exchange for their accommodations and also works odd jobs when they are available. Charles was sanctioned several times by the Ohio Department of Jobs and Family Services, resulting in the loss of his food stamp benefits. Both Candy and Charles testified that family members and friends often give them money. Given that the Christians' only steady source of income is Candy's SSI payments, which are insufficient to cover the Christians' monthly expenses, we find that the trial court's assessment of the Christians' financial situation is supported by the record.
 {¶ 19} We conclude that there is some competent, credible evidence to support the trial court's finding that Emily is a dependent child, i.e. that Emily's environment is such as to warrant the State, in Emily's interests, to assume her guardianship. As we stated in In re Burchfield
(1988), 51 Ohio App.3d 148, 156-157, 555 N.E.2d 325, "`the child does not first have to be put into a particular environment before a court can determine that [the] environment is unhealthy or unsafe." (Quoting In reBishop (1987), 36 Ohio App.3d 123, 126, 521 N.E.2d 838.) The Christians' sole assignment of error is overruled and the trial court's judgment is affirmed.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] Charles also has a son from a previous relationship who lives with the boy's mother. Charles apparently has no contact with his son.