OPINION — NUNC PRO TUNC *Page 2 
{¶ 1} Appellant-Father, Mark Gibbs, filed this appeal from the judgment entered in the Stark County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents, with regard to the minor children, Valerie Gibbs, Lillian Gibbs and Dorahn Gibbs, and ordered that permanent custody of the minor children be granted to the Stark County Department of Jobs and Family Services, (hereinafter, "SCDJFS").
 {¶ 2} Mother, Rhuana Gibbs, also appealed the permanent custody decision. We affirmed the decision of the trial court in In reGibbs, 5th Dist. Case Nos. 2007 CA 00304 2007 CA 00305,2008-Ohio-1386.
 {¶ 3} This appeal is expedited and is being considered pursuant to App. R. 11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND THE CASE {¶ 4} This appeal pertains to the permanent custody disposition of three children: Valerie Gibbs, born on July 3, 2003, Lillian Gibbs, born on January 3, 2005, and Dorahn Gibbs, born on September 20, 2006. Rhuana Gibbs is the natural mother of the children. Appellant Mark Patrick Gibbs is the natural father of the children. The parents are married and reside together.
 {¶ 5} In April of 2005, the family agreed to work with SCDJFS on an informal basis to remedy poor home conditions and hygiene concerns. In May of 2005, intake workers continued to observe unsanitary and hazardous home conditions. At the direction of SCDJFS, the children were placed with a neighbor until the children's home could be cleaned. The parents cleaned the residence and the children were returned. *Page 3 
Thereafter, the parents agreed to voluntarily participate in the Home Beautification Program.[1]
 {¶ 6} On August 4, 2005, Valerie was admitted to the hospital due to lead poisoning with a level of forty-five compared to a normal level of zero to ten.
 {¶ 7} On August 5, 2005, SCDJFS and the Canton Health Department visited the Gibbs' home. The home was found to be contaminated with lead and unsafe for children. In addition, the home condition was poor. There was cat feces on the floor, gnats everywhere and unsafe clutter. The same day SCDJFS filed a complaint in case number JU138197, alleging that Valerie and Lillian were dependent and/or neglected. The concerns in the complaint included poor hygiene and lack of cleanliness and hazardous conditions in the home. The complaint further indicated that the Canton Health Department had inspected the home and stated that the children could not return.
 {¶ 8} On August 30, 2005, the parents stipulated to a dependency finding for Valerie and Lillian, the children were adjudicated dependent, temporary custody was granted to SCDJFS and the court approved and adopted the case plan.
 {¶ 9} The case plan requirements for both parents included a psychological evaluation and any recommended treatment, participation in Goodwill parenting, clean and stable housing, appropriate employment and participation in the Multi-Development Home Beautification Services. Father was also ordered to attend Melymbrosia for domestic violence counseling and mother was ordered to receive individual counseling. *Page 4 
 {¶ 10} On July 5, 2006, SCDJFS filed a motion for permanent custody of Valerie and Lillian.
 {¶ 11} On September 22, 2006, Dorahn was born, and SCDJFS filed a complaint in case number 2006 JCV 1618 alleging dependency and neglect. Dorahn was placed in the emergency temporary custody of SCDJFS.
 {¶ 12} On November 6, 2006, SCDJFS amended its request for permanent custody of Valerie and Lillian to a request for a first six month extension of temporary custody. Temporary custody of the children was granted until February 5, 2007.
 {¶ 13} On December 12, 2006, Dorahn was adjudicated dependent.
 {¶ 14} On December 19, 2006, SCDJFS filed a motion to return Valerie and Lillian with protective supervision. SCDJFS stated that the parents had completed an updated psychological evaluation, maintained involvement with service providers and moved to a new residence which had been kept in an organized manner and was without safety hazards. On December 27, 2006, custody of the children was returned to the parents with ongoing protective supervision.
 {¶ 15} On June 25, 2007, SCDJFS filed a motion to terminate protective supervision of Valerie and Lillian. In the motion SCDJFS indicated that the agency would remain involved with the siblings under Dorahn's case and that the agency and the community would continue to help the family.
 {¶ 16} On June 25, 2007, the trial court held a dispositional review. In the decision, the magistrate stated that the home was still cluttered and "conditions are marginal." The magistrate further found that, although the parents had completed all *Page 5 
their required case plan services, "issues still exist." As a result, the trial court ordered that the case remain "status quo."
 {¶ 17} On July 17, 2007, SCDJFS filed and was granted an ex parte post dispositional motion for temporary custody. In the motion, SCDJFS indicated that "the home conditions have once again become unsafe for the children and the children were placed in the temporary custody of the SCDJFS pursuant to Juv. R. 6." On July 19, 2007, the children were placed in the temporary custody of the SCDJFS.
 {¶ 18} On July 30, 2007, SCDJFS filed a motion to amend the motion to terminate protective supervision to a motion for permanent custody pursuant to R.C. 2151.414, in case number JU138197 (Valerie and Lillian). SCDJFS also filed a motion for permanent custody pursuant to R.C. 2151.414, in case number 2006 JCV 1618 (Dorahn).
 {¶ 19} On October 11, 2007, the guardian ad litem's report was provided to the trial court. In the report, the guardian stated that it was time for the children to have a safe and permanent home. The guardian further stated that the grant of permanent custody to SCDJFS was in the children's best interest.
 {¶ 20} On October 11, 2007, and October 12, 2007, the trial court held a permanent custody hearing. After the presentation of evidence and by judgment entry filed on October 16, 2007, the trial court found by clear and convincing evidence that permanent custody was in the children's best interest and that the children could not and should not be placed with either parent within a reasonable period of time. The court ordered permanent custody of the children to SCDJFS. It is from this judgment that appellant seeks to appeal setting forth the following assignments of error. *Page 6 
 {¶ 21} Appellant raises three Assignments of Error:
 {¶ 22} "I. THE TRIAL COURT ERRED BY FINDING THE CHILDREN REMAINED IN FOSTER CARE FOR A PERIOD OF EIGHTEEN MONTHS.
 {¶ 23} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 24} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I. {¶ 25} In appellant's first assignment of error, he argues the trial court erred in finding the children had been in the temporary custody of the SCDJFS for a period of eighteen months.
 {¶ 26} In its judgment entry, the trial court stated, "* * * these children have remained in foster care for a period of eighteen months, (sixteen initially and two after the second removal). The children have been in foster care, outside of their home, greater than twelve of the last twenty-two months." (Findings of Fact and Conclusions of Law, Case No. 138197, Oct. 16, 2007).
 {¶ 27} The children were removed from the parents and adjudicated dependent on August 30, 2005. They remained in agency custody until December 22, 2006 when they returned to the parents on an extended visit. The children were removed from the home in July 2007. SCDJFS filed its permanent custody motion on July 30, 2007. *Page 7 
 {¶ 28} Regardless of the trial court's calculations, the children in this case have been in the temporary care of SCDJFS for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999 pursuant to R.C. 2151.414(B)(1)(d). {¶ 28} Appellant's first assignment of error is overruled.
 II., III. {¶ 29} In the second and third assignments of error, appellant argues that the trial court's grant of permanent custody is against the manifest weight of the evidence. Specifically, appellant argues that the trial court's decision, which found that the children could not or should not be placed with the appellant within a reasonable period of time and that the grant of permanent custody to SCDJFS was in the children's best interest, was against the manifest weight of the evidence. We disagree.
 {¶ 30} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118; In re: Adoption of Holcomb (1985), 18 Ohio St.3d 361,481 N.E.2d 613.
 {¶ 31} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also,C.E. *Page 8 Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. State v. Schiebel,55 Ohio St.3d at 74, 564 N.E.2d 54.
 {¶ 32} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273:
 {¶ 33} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v.Flickinger (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also,In re: Christian, Athens App. No. 04CA10, 2004-Ohio-3146; In re:C.W., Montgomery App. No. 20140, 2004-Ohio-2040.
 {¶ 34} Pursuant to 2152.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the flowing apply: *Page 9 
 {¶ 35} "(a) The child is not abandoned or orphaned or as not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents. * * *
 {¶ 36} "(d) The child has been in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 37} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":
 {¶ 38} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents *Page 10 
for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *
 {¶ 39} "(16) Any other factors the court considers relevant."
 {¶ 40} A trial court may base its decision that a child cannot or should not be placed with a parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, unreported; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, unreported.
 {¶ 41} Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the court shall consider all relevant factors, including but not limited to the following:
 {¶ 42} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 43} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 44} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999; *Page 11 
 {¶ 45} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; * * *"
 {¶ 46} In this case, the trial court made its permanent custody findings in part pursuant to R.C. 2151.414(B)(1)(a) and in part pursuant to 2151.414(B)(1)(d). The trial court found that the evidence established that Valerie and Lillian had been in foster care for more than 12 of the last 22 months and that Valerie, Lillian and Dorahn could not be placed with appellant within a reasonable period of time and should not be placed with appellant.
 {¶ 47} Furthermore, the testimony of Sue Snyder, Diane Bittaker and Angela Sanchez support the trial court's finding that the children could not or should not be placed with the parents within a reasonable period of time. Sue Snyder, the ongoing SCDJFS caseworker assigned to the children's case, testified that in August of 2005, the initial concerns that led to the filing of the complaint were dirty and hazardous home conditions. T.7. She stated that she would make monthly house visits and found the children to be filthy and the home to be unkempt. T.13-14. She testified that after two years of involvement "we are still battling with cluttered unclean home conditions, despite having a lot of in home services." T.15. She stated that she did not believe that the parents would be able to provide a safe clean home for the children on a consistent basis. T.16.
 {¶ 48} Diane Bittaker, a home based family coach employed by Goodwill Services, went into the Gibbs home to help reinforce what the parents were learning at Goodwill Parenting. T.35. She stated that during her visits the house was always in *Page 12 
disarray. T.36. She was concerned that Dorahn, who was eight months old, was in danger of choking on the miscellaneous debris that he could pickup and put into his mouth as he crawled across on the floors.T.36. She testified that she observed piles of gnat covered dirty diapers. T.40.
 {¶ 49} Angela Sanchez, a service coordinator for the Home Beautification Program testified that she got involved in June of 2007, because the family had continually failed to remain compliant with program goals. T.66. She testified that during more than a year of participation the parents had displayed an intellectual ability to maintain a clean and healthy home environment and were able to keep a room or two clean at a time but were not consistent on a long term basis. She stated that between June and July she made approximately four visits to the home before the children were removed. T.67. She testified that during her involvement the home conditions weren't good and that on a scale of one to four, with four being the worst, the Gibbs home was almost always a four. T.67. She testified that she gave the home a four rating because she observed dried up, hard, uncovered food in the refrigerator, gnats flying everywhere, dirty dishes piled up in the sink and on the floor, and no clear path to walk in the house or for the children to play. T.69-77. She testified that the parents were not consistent in following through to keep the house clean and maintained, that overall the conditions of the home did not improve, and that the parents did not build on what they were taught. T.68 and 80.
 {¶ 50} In the best interest phase of the permanent custody hearing, Sue Snyder testified that the children did not exhibit any developmental or psychological delays and were easily adoptable. She testified that the children were placed together in a foster to *Page 13 
adopt home and the foster parents had expressed a desire to adopt the children. Ms. Snyder stated that a grant of permanent custody would end the back and forth placements that the children had been experiencing. She stated that she believed that the harm caused by severing the parental bond was outweighed by the benefits of permanent custody for the children. T.133. Finally, she stated that she believed that a grant of permanent custody was in the children's best interest. T.133. In a written report, the Guardian Ad Litem similarly stated that a grant of permanent custody to SCDJFS was in the children's best interest.
 {¶ 51} In the findings of fact and conclusion of law the trial court held, "[i]t appears for whatever reason, they [the parents] are pathologically unable or unwilling to maintain a clean, safe home for three very young children. The trial court stated that "despite repeated services, the first objective of the case plan, to provide a safe clean home, has not been met."
 {¶ 52} Accordingly, we find the that the trial court's findings, that (1) Valerie and Lillian had been placed in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period; (2) the children cannot be placed with any of the parents within a reasonable time and should not be placed with the parents; and (3) it is in the children's best interest to be provided with a safe and stable environment, which can only be available through a grant of permanent custody to the Stark County Department of Job and Family Service, were not against the manifest weight of the evidence.
 {¶ 53} Accordingly, appellant's second and third assignments of error are not well taken and are hereby overruled. *Page 14 
 {¶ 54} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 By: Delaney, J. Hoffman, P.J. and Gwin, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] The Home Beautification Program is a program administered by Multi-Development Services to address home cleanliness, safety and hygiene. *Page 1