[Cite as *In re A.S.*, 2021-Ohio-422.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: A.S. | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 20-COA-003 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Ashland County Court of Common Pleas, Juvenile Division, Case No. 20163058 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | February 16, 2021 |

APPEARANCES:

For Appellant Mother:

EMILY M. BATES
46 W. Main St.
Ashland, OH 44805

For Appellee State of Ohio:

CHRISTOPHER R. TUNNELL
ASHLAND CO. PROSECUTOR
COLE F. OBERLI
110 Cottage St., Third Floor
Ashland, OH 44805

*Delaney, J.*

{¶1} Appellant Mother appeals from the December 11, 2019 Opinion and Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, granting a Planned Permanent Living Arrangement for A.S. via the Ashland County Department of Job and Family Services ("Agency"). Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on June 5, 2017, when Sgt. Aaron Kline of the Ashland Police Department was contacted by Mother's adult daughter who complained Mother was intoxicated and walking to an address on Taylor Street. Kline encountered Mother walking as she held a baby and Kline noticed red marks and scabs all over the baby's body. This baby was B.S., a sibling of A.S., the subject of the instant case. Kline could smell an odor of an alcoholic beverage about Mother's person. He photographed the baby, and Mother said B.S. was being treated for eczema but she had recently missed a doctor's appointment. Kline testified that Mother admitted consuming four to five beers and smoking weed within the last week.

{¶3} At that point Kline arrested Mother and contacted the Agency regarding removal of the children. Kline testified that after he placed Mother under arrest, she said she had consumed 30 to 35 beers and that she smoked crack and snorted cocaine with her father the night before. Mother threatened to kill herself and was transported to a hospital.

{¶4} Due to Mother's arrest and condition, A.S. and her other children, L.S.IV and B.S., were removed. The Agency filed complaints alleging the three children to be dependent pursuant to R.C. 2151.04(C). Mother later admitted to the complaints and all

three children were adjudicated dependent. The children were placed in the temporary custody of the Agency.

{¶5} On January 18, 2019, the Agency filed a motion for permanent custody regarding all three children and in the alternative, a motion for a planned permanent living arrangement for A.S. only.

{¶6} Supervisor Ashley Starcher testified on behalf of the Agency. Starcher oversaw this case from its inception until September 2018. She testified that Mother was convicted of child endangering following the incident with Kline.

{¶7} Starcher testified about Mother's case plan, which included all three children. The Father of A.S. and L.S. IV is Luther Smith III. Father was provided with notice of all hearings and was advised of his right to be represented by court-appointed counsel. Prior to and at the time of removal, all three children lived with Mother. A.S. and B.M.S. have never lived with Father and their relationship with him is sporadic and inconsistent at best. Father lives in another state and was not a participant in the case plan and evidence indicated that children have not had contact with him for a long period of time prior to inception of this case.

{¶8} Mother was assigned drug services, mental health services, parenting services, and case management. Mother's case management also included obtaining and maintaining a stable home and environment, maintaining employment, cooperating with the Agency and its workers, submitting to random drug tests and remaining drug free.

{¶9} Mother did participate in parenting education classes, and was pending completion in December 2018. As part of drug services, Mother was required to provide random drug tests for the Agency. Starcher testified Mother tested positive for cocaine

on September 27, October 4, and November 17, 2017. Mother wanted to "get her life together" and "make changes" while she was incarcerated in January 2018, but she again tested positive for cocaine on May 25, June 4, June 19, and July 26, 2018. Starcher attributed Mother's relapse to her family. At one point Mother checked herself into a rehabilitation facility but checked herself out after two days.

{¶10} Mother also lost her housing in July 2018 and had inconsistent living arrangements.

{¶11} Caseworker Amber Barone became involved in the case in September 2018 and also testified on behalf of the Agency. She met with Mother on October 25, 2018, and Mother was transient with no permanent address.

{¶12} Also on October 25, 2018, Mother tested positive for cocaine. At that time, Mother told Barone she was not willing to work with the Agency and that she wanted a new caseworker. Barone was unsuccessful in making contact with Mother from November 2018 until January 2019. In January 2019, Mother initiated contact and said she was living in Akron with friends. Mother agreed to come to the Agency the next Monday to meet with Barone and perform a drug screen. She failed to do so. Mother's failure to meet with or cooperate with the Agency meant she was also not visiting with her children.

{¶13} Caseworker Diane Chinn also testified on behalf of the Agency because she inherited the case from Barone. Chinn testified that her first phone contact with Mother was January 31, 2019. Mother had unsuccessfully attempted to receive inpatient drug treatment and still had no permanent address. Mother scheduled to meet with Chinn but then failed to appear. Chinn first met with Mother on March 18, 2019, when Mother

visited her children at the Agency; this was Mother's first visitation since Chinn was assigned to the case.

{¶14} Mother received a mental health and substance abuse assessment on February 5, 2018, but completed no other counseling services. Mother was diagnosed with major depressive disorder, anxiety disorder, and cocaine use disorder, and further counseling was recommended. The trial court described her lifestyle as "transient at best."

{¶15} A.S. was age 15 at the commencement of this action and was age 17 at the evidentiary hearing. When the three children were removed initially, they were placed in three separate foster homes. A.S. was placed in a foster home where her older sister also resides. A.S. has been placed in this foster home previously and is familiar with the residents, including her older sister. The home is safe and appropriate. All interactions between A.S., the foster parents, and others residing in the home are appropriate and A.S.'s needs are met in the home.

{¶16} A.S. has remained in the same therapeutic foster home throughout the entire history of this case. One incident arose in 2018 when she left the foster home with another foster child and used cocaine, but she ultimately returned and the incident was addressed appropriately.

{¶17} The placement provided for A.S. is certified, safe and appropriate.

{¶18} A.S. was 17 years old at the time of the permanent custody hearing. She knows her mother and has a relationship with her, and also with other family members. She is aware of her mother's issues and of the circumstances of this case. She is doing well in her foster home and is moving toward independent living; she is employed on a

part-time basis and is doing well in school.  A.S. does not want to be adopted and does not want her mother or father's parental rights to be terminated.

{¶19} The caseworker testified to her opinion that the children cannot be returned to Mother or their father, therefore an order of permanent custody is in the younger children's best interest and a planned permanent living arrangement would serve A.S.'s best interest.

{¶20} The Guardian Ad Litem (G.A.L.) has been involved since the commencement of the case, has participated in all hearings, and has filed numerous written reports.  Her findings are consistent with those of the trial court.  She confirms there was a period of approximately 9 months in which Mother did not visit the children; in over two years, Mother has not remedied any of the issues that resulted in the original filing of the case.  The G.A.L. confirms that Mother loves the children and they love her, but this fact alone does not remedy the existing issues and does not establish that the children can safely be returned to Mother's care.  The G.A.L. opined the evidence supports a finding that these issues will not be remedied in the reasonable future and the trial court must act to ensure the stability and well-being of the children.

{¶21} The G.A.L. further opined an order of permanent custody was in the best interest of B.M.S. and L.S. IV, and that under circumstances specific to A.S., a planned permanent living arrangement would suit her best interest.

{¶22} After the hearing, the Juvenile Court found by clear and convincing evidence that L.S. IV and B.S. be placed in the permanent custody of the Agency.  A.S. was placed in a Planned Permanent Living Arrangement.

{¶23} Mother now appeals from the trial court's December 11, 2019 judgment entry.

{¶24} Mother raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶25} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF A PLANNED PERMANENT LIVING ARRANGEMENT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

{¶26} Mother argues the juvenile court's decision to grant a planned permanent living arrangement for A.S. is against the manifest weight and sufficiency of the evidence. We disagree.

{¶27} A trial court's decision to award a Planned Permanent Living Arrangement must be supported by clear and convincing evidence. R.C. 2151.415(C). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55

Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74.

{¶28} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian,* 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C.W.,* 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

{¶29} R.C. 2151.415(C) addresses Planned Permanent Living Arrangements as follows:

> (C)(1) If an agency pursuant to division (A) of this section requests the court to place a child into a planned permanent living arrangement, the agency shall present evidence to indicate why a

planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child. A court shall not place a child in a planned permanent living arrangement, unless it finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, that the child is sixteen years of age or older, and that one of the following exists:

(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.

(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D)(1) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative;

(c) The child has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living.

(2) If the court issues an order placing a child in a planned permanent living arrangement, both of the following apply:

(a) The court shall issue a finding of fact setting forth the reasons for its finding;

(b) The agency may make any appropriate placement for the child and shall develop a case plan for the child that is designed to assist the child in finding a permanent home outside of the home of the parents.

{¶30} In the instant case, Mother acknowledges A.S. was in the custody of the Agency for twelve or more months of a consecutive twenty-two-month period. However, she argues, Mother and siblings have ongoing relationships with A.S. which all parties wish to continue. Appellee counters that Mother was noncompliant with most of her case plan; she was unable to maintain sobriety or housing for any consistent length of time. She claimed to want a relationship with all of her children, but failed to visit them for long periods of time.

{¶31} It is vital that A.S., and all of Mother's children, have a stable, safe environment. The record before us indicates the current placement is going well.

{¶32} We agree with appellee that Mother's inability to maintain sobriety, work, housing, or a consistent relationship with her children outweighed her phone contact and sporadic relationship with A.S. We conclude the findings of the juvenile court are supported by clear and convincing evidence.

## CONCLUSION

{¶33} Mother's sole assignment of error is overruled and the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Wise, John, P. J. and

Baldwin, J., concur.