[Cite as *In re M.A.*, 2024-Ohio-5383.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| M.A. (DOB: 06-27-2016) | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| A.A. (DOB: 07-25-2017) | : | |
| | : | |
| T.A. (DOB: 07-21-2018) | : | Case No. 24CA000023 |
| | : | 24CA000024 |
| | : | 24CA000025 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Guernsey County
Court of Common Pleas, Juvenile
Division, Case No. 22JC00312

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    November 13, 2024

APPEARANCES:

For Plaintiff-Appellant Father

RICHARD D. HIXON
3808 James Court, Suite 2
Zanesville, Ohio 43701

For Defendant-Appellee Guernsey
Co Children Services

MELISSA WILSON
274 Highland Avenue
Cambridge, Ohio 43725

For Plaintiff-Appellant Mother

LYNDSAY SULLIVAN
PO Box 47
Bridgeport, Ohio 43912

Guardian Ad Litem

RACHEL DUNFEE
217 N Broadway
New Philadelphia, Ohio 44663

*Baldwin, J.*

**{¶1}** The appellant appeals the decision of the Guernsey County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to the appellee, Guernsey County Children Services ("the agency"). The relevant facts are as follows.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** M.A. was born on June 27, 2016, A.A. was born on July 25, 2017, and T.A. was born on July 21, 2018 ("the minor children"). The appellant is the biological father of the minor children. T.T. is their biological mother ("the mother").

**{¶3}** On October 31, 2022, the agency filed a complaint alleging the dependency of the minor children under both R.C. §2151.04(B) and (C). The agency filed a Motion for Emergency Temporary Custody along with the complaint. At the time, the minor children were placed with A.D., a kinship placement pursuant to a safety plan. The trial court granted the motion.

**{¶4}** On January 17, 2023, the combined adjudicatory and dispositional hearing was held, as well as a hearing on A.D.'s Motion for Legal Custody. Upon agreement of the mother, the trial court found the minor children to be dependent. The trial court denied A.D.'s Motion for Legal Custody and granted temporary custody to the agency.

**{¶5}** On January 22, 2024, the agency filed a Motion to Modify Dispositional Orders to that of Permanent Custody.

**{¶6}** On July 9, 2024, the trial court held a permanent custody hearing.

**{¶7}** At the hearing, Mattea Shockling testified that she is a caseworker at Cedar Ridge Behavioral Health Solutions. She came in contact with the mother when the mother

completed an assessment on July 31, 2023. Cedar Ridge recommended outpatient therapy, case management, and medication management for the mother. However, the mother did not comply with those recommendations. Her last visit with her children was on January 22, 2024. Her last case management appointment was on August 21, 2023. Her last therapy session was on September 25, 2023. She never participated in services for medication management.

{¶8}    Next, Cassandra Mack testified that she is an ongoing caseworker with the agency. She is the caseworker for the appellant, the mother, M.A., A.A., and T.A. The family has been involved with the agency since August 1, 2022. On that day, the mother and her children were evicted from a hotel they were staying at and had nowhere to go. The minor children were placed with A.D. as part of an out-of-home safety plan. A.D. is a relative of the appellant. The safety plan ended on October 28, 2022, when the agency received a report alleging A.D. physically abused the children. Since that day, the minor children have been in the agency's continuous custody.

{¶9}    Ms. Mack continued that the mother was the only adult on the case plan. The mother was to sign all releases of information for the agency to ensure compliance and monitor her progress. She was not compliant with this case plan objective as she did not remain in contact with Ms. Mack. The mother was to have a mental health assessment and follow all recommendations. The mother had an assessment at Cedar Ridge. She was diagnosed with adjustment disorder, generalized anxiety disorder, and cannabis use disorder. The mother was to complete and engage in a parenting class to demonstrate she can parent safely. She did not complete a parenting class.

{¶10} Next, the mother was to obtain and maintain a safe, stable, and sanitary house. She had stable housing at one time but could not maintain it due to the nonpayment of rent. She has stable housing now in Bethesda. However, mold is growing on the ceilings, and the floors seem to be unstable. She lives there with her husband, who works. He has a criminal record and has spent time in prison. He does not have a relationship with the children. The mother has not seen her children since January of 2024. The mother was also to complete random drug screens. She only completed four of the drug screens, and she tested positive for THC each time. The mother has had very little contact with the minor children, has not made substantial progress on her case plan, and has had criminal history during the pendency of this case. After having contact with the mother, the minor children's behavior deteriorates. A.A. and T.A. begin acting like babies, and M.A. will not listen and wants to run away.

{¶11} Ms. Mack also testified that the appellant was not part of the case plan as he was incarcerated for a period during the pendency of this case. He has not asked to be put on a case plan or visited with the minor children. The agency does not support the appellant receiving custody as the minor children have had little contact with him, and their only memories of the appellant are bad ones. The agency also does not support A.D. obtaining custody of the minor children due to alleged physical abuse by A.D. There are no kinship options available at this time.

{¶12} Ms. Mack said the minor children are doing well in foster care. M.A. is now able to read, where he could not before, and he is able to attend sporting events. A.A. and T.A. enjoy going to the pool, going camping, and going to the movies. They are doing

well academically in foster care; compared to before they were doing poorly. She does not believe reunification is possible.

**{¶13}** Next, A.D. testified that she had custody of the minor children when the case opened. They lived with A.D. for two months. The minor children were removed from the home because of a report the children were being abused and neglected.

**{¶14}** Rachel Dunfee then testified she is the guardian ad litem in this case. She filed a report in this matter. Ms. Dunfee believes it is in the minor children's best interest for the trial court to grant the agency permanent custody. They are doing well in their foster placements, have bonded with the foster families, have had no visitation with the mother since January of 2024, and have no meaningful bond with their parents. Ms. Dunfee believes that the appellant is not stable enough for the minor children to be reunified with him.

**{¶15}** Finally, Cheryl Gadd testified that she is a court-appointed special advocate for this case. Ms. Gadd also believes it is in the minor children's best interest for the trial court to grant the agency permanent custody.

**{¶16}** The trial court granted the agency permanent custody of the minor children.

**{¶17}** The appellant filed a timely notice of appeal and herein raised the following assignment of error:

**{¶18}** "I. THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY AND TERMINATION OF APPELLANT'S PARENTAL RIGHTS WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

{¶19} In the appellant's sole assignment of error, the appellant argues the trial court erred in terminating the appellant's parental rights as this was not supported by clear and convincing evidence. We disagree.

**STANDARD OF REVIEW**

{¶20} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361 (1985).

{¶21} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71 (1990); see also, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel* at 74.

{¶22} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." *Id*. Issues relating to the credibility of witnesses and the

weight to be given the evidence are primarily for the trier of fact. As the Supreme Court of Ohio explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984): "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶23}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 1997-Ohio-260; see also, *In re: Christian*, 2004-Ohio-3146 (4th Dist.); *In re: C.W.*, 2004-Ohio-2040 (2nd Dist.).

### ANALYSIS

**{¶24}** "The right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct.1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶25}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a

child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶26} Following the hearing, R.C. §2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) A child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)  the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) the child has been in the temporary custody of one or more public children's services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶27}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶28}** In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶29}** In the case *sub judice*, the appellant concedes that R.C. §2151.414(B)(1)(d) has been met. Instead, he argues granting permanent custody to the agency was not in the best interest of the minor children. We disagree.

{¶30} At trial, Ms. Mack testified the mother did not complete a required parenting class and mental health assessment and follow recommendations. The mother did not obtain and maintain safe and stable housing until right before the permanent custody hearing. This home had mold growing on one of the ceilings, and the floors were unstable. She is supported financially by her husband. He has a criminal record and served prison time. The mother did not submit to all of the drug screens and tested positive for THC on the tests she took.

{¶31} The appellant never requested to be on the case plan and did not see the minor children throughout the pendency of the case.

{¶32} The children were on a safety plan with A.D. from August 1, 2022, until October 28, 2022. This safety plan ended due to allegations that A.D. physically abused the children. The mother was supportive of the agency taking custody of the minor children at that time.

{¶33} Ms. Gadd testified that the minor children are thriving in foster care. She noted that she was surprised to see A.D. at the hearing. She said that she had encountered A.D. while working on a previous case and would not recommend custody of the minor children be given to A.D.

{¶34} The children's guardian ad litem also testified that granting permanent custody to the trial court was in the best interest of the minor children. They have bonded with their foster families and are doing well in their new homes.

{¶35} The trial court's finding that granting the agency permanent custody of the children is in their best interest is supported by clear and convincing evidence.

{¶36} Accordingly, the appellant's sole assignment of error is overruled.

**CONCLUSION**

**{¶37}** Based on the foregoing, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.