OPINION *Page 2 
{¶ 1} Appellant-father Randy P., Sr. appeals the August 20, 2007, judgment entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated his parental rights with respect to his son, Randy P., Jr. and granted permanent custody of the child to appellee, the Stark County Department of Job and Family Services (hereinafter "SCDJFS").
 STATEMENT OF FACTS AND CASE {¶ 2} Appellant is the natural father of Randy P., Jr., whose date of birth is July 13, 2006. Kathy Ortscheid is the child's natural mother.
 {¶ 3} In July of 2006, the SCDJFS became involved with the family on an informal basis and requested that the parents each complete psychological evaluations, attend Goodwill Parenting classes and participate in Healthy Tomorrows.
 {¶ 4} On September 27, 2006, SCDJFS filed a complaint alleging that Randy Jr. (then two months old) was a dependent and neglected child. The concerns in the complaint included domestic violence, unsafe home conditions and the parents limited mental abilities to properly care for the child.
 {¶ 5} On September 28, 2006, after a shelter care hearing, the child was placed in the temporary custody of SCDJFS. That same date, SCDJFS filed a case plan with a goal toward reunification. The case plan required the parents to attend anger management, participate in Healthy Tomorrows, attend Goodwill Parenting, complete a psychological evaluation and any recommended treatment, obtain employment, and maintain safe and stable housing. Appellant was further ordered to attend individual counseling at Trillium. *Page 3 
 {¶ 6} On October 23, 2006, Randy Jr. was put in relative placement with appellant's cousins, Diane and Ed Aquino.
 {¶ 7} On December 5, 2006, appellant stipulated to a finding of dependency. The court ordered that the child was to remain in the temporary custody of SCDJFS and that the case plan filed on September 28, 2006, was to be approved and adopted.
 {¶ 8} As a result of the psychological evaluation, it was determined that appellant had a full scale IQ of 61 and was functioning at the level of a six year old with regard to non-verbal skills[1] and at the age of an eleven year old with regard to verbal skills.
 {¶ 9} On March 23, 2007, a dispositional review hearing was held before a magistrate. At the time of the hearing, appellant was employed at Burger King on a part time basis. In the order, the magistrate found that that the parents home remained dirty and cluttered. The magistrate further stated that the parents had recently moved to a new residence and had not informed SCDJFS of the move. As a result, the magistrate ordered that the matter remain at "status quo."
 {¶ 10} On May 16, 2007, SCDJFS filed a motion for permanent custody pursuant to R.C. 2151.414. In the motion, SCDJFS alleged that, although the appellant had completed Goodwill parenting, he exhibited little ability to provide for his son financially or emotionally. The motion further alleged that the psychologist had expressed extreme concerns that appellant would not be able to parent his son in a safe and competent manner and that the child had "little" bond with his parents. The permanent custody motion was scheduled for further hearing on July 12, 2007. *Page 4 
 {¶ 11} On July 12, 2007, prior to the permanent custody hearing, the child's mother, Kathy Ortscheid, being represented by counsel and having the assistance of a court appointed guardian ad litem, stipulated to the trial court's grant of permanent custody to SCDJFS. Father requested the presentation of evidence and the matter proceeded to hearing. T.3.
 {¶ 12} At the hearing the State presented the testimony of SCDJFS caseworker, Lisa Eggenschwiler. Ms Eggenschwiler testified that she was assigned to the case in August of 2006. T.18. She stated that the concerns which led to the initial filing included severe domestic violence in the home, hazardous living conditions and the mental health of the parents. T.10. She testified that the court approved and adopted a case plan which included the following: a Quest Assessment and any recommended treatment, individual counseling at Trillium, a psychological evaluation at Northeast Ohio Behavioral Health Center, drug counseling, parenting classes, anger management classes at Melymbrosia, the continuation of prescribed medications and stable employment. T. 11 and 22.
 {¶ 13} Ms. Eggenschwiler testified that appellant completed a psychological evaluation which recommended further participation in parenting classes, anger management, individual counseling and medications. T.12. She testified that the psychological evaluation found that appellant had an IQ of 61. She stated that the examiner expressed "great concerns and reservations" regarding appellant's ability to parent in a safe and competent manner. T.12. She stated that the examiner's opinion was that the appellant would not be able to parent independently. T.12. *Page 5 
 {¶ 14} Ms. Eggenschwiler testified that as a result of a criminal conviction for disorderly conduct it was recommended that appellant complete the anger management program at Melymbrosia.T.13 and 19. She testified that appellant participated in anger management from January of 2007 until June of 2007 when he was terminated from the program for failure to take responsibility for his own actions, lack of motivation and sporadic attendance. T. 13 and 23.
 {¶ 15} Ms. Eggenschwiler testified that appellant attended Goodwill Parenting and received a certificate of attendance, the lowest certificate of achievement. T.13. She stated that, at the discharge meeting, the Goodwill coordinators stated that appellant lacked motivation in class participation and parenting. T.14.
 {¶ 16} Ms. Eggenschwiler testified that appellant had not recently submitted any urine screens and that the agency did not have current concerns regarding drug abuse.T.14. On cross-examination the appellant testified that he had not used any illegal substances for approximately three years but subsequently admitted that he had used marijuana within the last two weeks prior to the hearing. T.26.
 {¶ 17} Ms. Eggenschwiler testified that appellant had employment and independent housing. T.14. However, on cross-examination the appellant admitted that he was in the process of being evicted from his current housing. T.32-33.
 {¶ 18} Ms. Eggenschwiler testified that appellant had weekly visits with the child which lasted approximately two hours. T.15. She stated that during those visits appellant had to be prompted to do things, would get bored or tired, and would let the child wander. T.15. Essentially, she testified that appellant could not maintain control *Page 6 
over the child for the entire two hours. T.15. She further testified that it did not appear that the appellant and the child were bonded. T.21.
 {¶ 19} Ms. Eggenschwiler testified that the in her opinion the risks that were initially present at the time of the child's removal from his home had not been reduced. T.15. She stated that appellant continued to display a lack of parenting skills, failed to adequately address his anger management issues and that, as of March of 2007, the home conditions were still poor. T. 15-16. She testified that these ongoing concerns still presented a risk to the safety of the child. T. 15
 {¶ 20} Dr. Robin Tener, a clinical psychologist with Northeast Ohio Behavioral Health, Ltd. submitted a report to the trial court (State's Exhibit A). Dr. Tener, in her March 2, 2007, report, recommended that appellant complete anger management counseling through Melymbrosia. (Ex. A, pg. 9). The report noted that appellant indicated he had experienced "blackouts" when extremely angry (Ex. A, pg. 4), and he had admitted to slapping the child's mother (Ex. A, pg. 4). According to the report, appellant "has basic life functioning issues that must reach a point of resolution before he can work on skills required to parent the child." Those life functioning issues include anger management. (Ex. A, pg. 8). Dr. Tener, in her report, further voiced "extreme concerns about [appellant] ever being able to parent Randy Jr. in a safe and competent manner" and to parent independently. (Ex. A, pg. 9)
 {¶ 21} On July 12, 2007, the Guardian Ad Litem for the child submitted a written report. In the report, the guardian stated that when the child was removed from his parents' care he was "passive and limp." The guardian stated that the child's relative placement had been "stimulating, loving and very nurturing." She stated that the child *Page 7 
was now an active one year old who was "walking and talking" and had also become "affectionate and expressive." She stated, "I believe that it is in Randy's best interest for the court to grant the permanent custody motion filed by SCDJFS so that the adoption process, which will provide stability for Randy, can begin as quickly as possible. His current relative placement is an exceptional environment for Randy, and they have agreed to allow his father to continue to be a part of Randy's life. With father's very limited abilities and the distinct probability that mother will return any time, I believe that granting permanent custody to the SCDJFS is in the best interest of Randy."
 {¶ 22} Ms. Eggenschwiler was also called to testify in the best interest phase of the proceedings. She testified that the child was doing very well in his current relative placement. T.34. She testified that the there were no medical concerns with regard to the child's health. T.34. She stated that the child was very bonded to his caregivers ("he loves them and they love him") and that they were interested in adopting the child. T.35 and 36. She stated that he calls them "mommy and daddy." T.35. She testified that there is no bond between the mother and the child. T.35. She testified that the relationship between the child and appellant is more like two friends than father and son. T.35. She testified that she believed that the grant of permanent custody of the child to SCDJFS was in the child's best interest because he needs to be, and is currently in, a safe environment, which neither parent is capable of providing. T.36. She stated that she believed it was not fair to the child to wait for permanency. T.37.
 {¶ 23} On August 20, 2007, the trial court filed a Judgment Entry and written Findings of Fact and Conclusions of Law terminating appellant's parental rights and granting permanent custody of Randy P., Jr. to SCDJFS. In the judgment the trial court *Page 8 
found that "[d]ue to the father's actions and the father's failure to comply with the objectives of the case plan, the court finds that the father has failed to reduce the risk to his child." Findings of Fact and Conclusions of Law, paragraph 16.
 {¶ 24} It is from this judgment entry that appellant-father appeals setting forth the following assignments of error:
 {¶ 25} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 26} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I, II {¶ 27} In the first and second assignments of error the appellant argues that the trial court's grant of permanent custody is against the manifest weight and sufficiency of the evidence. Specifically, appellant argues that the trial court's findings, that the child should not or could not be placed with the appellant within a reasonable period of time and that the grant of permanent custody to SCDJFS was in the child's best interest, were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 28} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[T]he measure or degree of proof that will produce *Page 9 
in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." Cross v.Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118; In re: Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.
 {¶ 29} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also,C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment.Schiebel, 55 Ohio St.3d at 74, 564 N.E.2d 54.
 {¶ 30} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273:
 {¶ 31} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court *Page 10 
on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger,77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159; see, also, In re:Christian, Athens App. No. 04CA10, 2004-Ohio-3146; In re: C.W., Montgomery App. No. 20140, 2004-Ohio-2040.
 {¶ 32} Pursuant to 2151.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the flowing apply:
 {¶ 33} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents.* * *
 {¶ 34} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent":
 {¶ 35} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist *Page 11 
the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *
 {¶ 36} "(16) Any other factors the court considers relevant."
 {¶ 37} A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. SeeIn re: William S., 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738;In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328;In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.
 {¶ 38} Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the court shall consider all relevant factors, including but not limited to the following:
 {¶ 39} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 40} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 12 
 {¶ 41} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 42} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;* * *"
 {¶ 43} In this case, the evidence supported the trial court's conclusion that the child could not be placed with appellant within a reasonable period of time and should not be placed with appellant. The evidence established that Dr. Robin Tener, a clinical psychologist with Northeast Ohio Behavioral Health, found that one of appellant's life functioning issues included anger management. She stated that "this issue" must be addressed before [the appellant] can work on skills required to parent the child." She further recommended that the appellant complete an anger management program. However, despite the psychologists' recommendations the appellant was terminated from Melymbrosia due to his failure to take responsibility for his own actions, his sporadic attendance and his lack of motivation.
 {¶ 44} Further concerns included appellant's reluctance to take prescribed medication for anxiety and depression. The psychologist wrote that the appellant did not take his medication because "he did not like pills" and that he reported a shift in moods including experiencing "blackouts" when he was extremely angry.
 {¶ 45} Dr. Tener, in her report, also voiced "extreme concerns about [appellant] ever being able to parent Randy Jr. in a safe and competent manner" and to parent *Page 13 
independently. (Ex. A, pg. 9). Lisa Eggenschwiler, the ongoing case worker from Stark County Department of Job and Family Services, testified that while appellant attended Goodwill Parenting classes, he only received a certificate of attendance, which is the lowest certificate possible. At the hearing, she testified that appellant was unable to maintain control and supervision over the child for two hours and needed to be prompted during visitation to do many things.
 {¶ 46} Moreover, at the July 2007, hearing, appellant initially testified that he had last used illegal substances three (3) years ago. During his clinical interview with Dr. Tener he admitted that he began using marijuana at age 15 on a daily basis. On cross-examination, appellant, when confronted with a report from Trillium, indicated that he did not want people to know that he used marijuana, and admitted that he had used marijuana a couple of weeks prior to the July 12, 2007, hearing and that he would test positive for the same if tested on the day of the hearing.
 {¶ 47} During the best interest portion of the July 12, 2007, hearing, Lisa Eggenschwiler testified that the child had been placed with Diane and Ed Aquino, who are related to him, since October 23, 2006, and that he was doing very well with them. Eggenschwiler further testified that the child was bonded to the Aquinos, who were interested in adopting him, and that they loved him and he loved them and called them "Mommy" and "Daddy." The following is an excerpt from Eggenschwiler's testimony:
 {¶ 48} "Q. Now you testified earlier that Father's been seeing the child on a weekly basis?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. Please describe that interaction for the Court? *Page 14 
 {¶ 51} "A. Um when. . .when we show up for the visits um Randy really the baby um does not is not excited to see him. There is not a lot of facial expressions and so forth. Randy Jr. does is excited to see him. Um but there's ah. .the baby. . .he plays with him but its [sic] not it's more of a friend. . .a friend playing with a friend.
 {¶ 52} "Q. No bonding that you would see between Father's and sons?
 {¶ 53} "A. Correct.
 {¶ 54} "Q. Okay. And is Father attentive to the child during the entire visit?
 {¶ 55} "A. Ah during probably half of it. Um he interacts with him ah. . .and he does follow him around during the second half of the victim [sic]. Lets him kind of wonder.
 {¶ 56} "Q. Does he have to be redirected during the visit?
 {¶ 57} "A. Yes he does." Transcript at 35-36.
 {¶ 58} When asked, Eggenschwiler indicated that she thought that it was in the child's best interest that permanent custody be granted. Eggenschwiler further testified that she did not believe that the child would be safe with either parent and that it would be unfair to have the child continue waiting for permanency.
 {¶ 59} In her written report, the guardian ad litem also stated that permanent custody was in the child's best interest.
 {¶ 60} For these reasons we find that the trial court's determination that appellant had failed to reduce the risk to the child and therefore the child could not be placed with either parent within a reasonable time or should not be placed with either parent, was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to Stark County Department of *Page 15 
Job and Family Services was in the child's best interest was not against the manifest weight or sufficiency of the evidence.
 {¶ 61} Accordingly, appellant's first and second assignments of error are not well taken and are hereby overruled.
 {¶ 62} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J., Delaney, J. concurs
Gwin, P.J. dissents separately
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] "Non-verbal IQ measures an individual's ability to abstractly apply information and to use good judgment and reasoning, essential to safe parenting." (State's Exhibit A.) *Page 16