[Cite as *In re L.S.*, 2020-Ohio-4757.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: L.S. IV | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 20-COA-002 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court
                              of Common Pleas, Juvenile Division,
                              Case No. 20163057

JUDGMENT:                     AFFIRMED

DATE OF JUDGMENT ENTRY:       September 30, 2020

APPEARANCES:

For Appellant Mother:                 For Appellee State of Ohio:

EMILY M. BATES                        CHRISTOPHER R. TUNNELL
46 W. Main St.                        ASHLAND CO. PROSECUTOR
Ashland, OH 44805                     COLE F. OBERLI
                                      110 Cottage St., Third Floor
                                      Ashland, OH 44805

*Delaney, J.*

{¶1} Appellant Mother appeals from the December 11, 2019 Opinion and Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, granting permanent custody of L.S. IV to the Ashland County Department of Job and Family Services ("Agency"). Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on June 5, 2017, when Sgt. Aaron Kline of the Ashland Police Department was contacted by Mother's adult daughter who complained Mother was intoxicated and walking to an address on Taylor Street. Kline encountered Mother walking as she held a baby and Kline noticed red marks and scabs all over the baby's body. This baby was B.S., a sibling of L.S. IV, the subject of the instant case. Kline could smell an odor of an alcoholic beverage about Mother's person. He photographed the baby, and Mother said B.S. was being treated for eczema but she had recently missed a doctor's appointment. Kline testified that Mother admitted consuming four to five beers and smoking weed within the last week.

{¶3} At that point Kline arrested Mother and contacted the Agency regarding removal of the children. Kline testified that after he placed Mother under arrest, she said she had consumed 30 to 35 beers and that she smoked crack and snorted cocaine with her father the night before. Mother threatened to kill herself and was transported to a hospital.

{¶4} Due to Mother's arrest and condition, B.S. and her other children, L.S.IV and A.S., were removed. The Agency filed complaints alleging the three children to be dependent pursuant to R.C. 2151.04(C). Mother later admitted to the complaints and all

three children were adjudicated dependent. The children were placed in the temporary custody of the Agency.

{¶5} Regarding L.S. IV, the Agency filed a motion for permanent custody on January 18, 2019, and the motion was heard by the court on May 25, 2019.

{¶6} Supervisor Ashley Starcher testified on behalf of the Agency. Starcher oversaw this case from its inception until September 2018. She testified that Mother was convicted of child endangering following the incident with Kline.

{¶7} Starcher testified about Mother's case plan, which included all three children. L.S. IV's father lived out of state and was not involved with his child.

{¶8} Starcher testified that L.S. IV struggled being away from Mother during her time as the family's caseworker. L.S. IV was assigned case management services consisting of meeting the caregivers and child in his placement. L.S. IV was originally placed in a foster home, but was transferred to Christian Children's Home of Ohio from October 2017 until August 2018 to address behavioral issues. L.S.IV was later moved to his grandmother's house, but was then moved to a different foster home because of difficulty linking services. L.S. IV remained at the final foster home at the time of the permanent custody hearing.

{¶9} L.S. IV did have regular visitation with his adult sibling Amber throughout 2017 and expressed concerns about being able to visit with his siblings. L.S.IV requested an opportunity to speak with the juvenile court in camera and the court inferred he was old enough to know his parents and give input on his future. The entry does not reference an in-camera interview, but does note the Guardian Ad Litem (G.A.L.) discerned the

wishes of the child. The G.A.L. stated in court, however, that she was not certain the child was truthful about his desires.

{¶10} Mother was assigned drug services, mental health services, parenting services, and case management. Mother did participate in parenting education classes, and was pending completion in December 2018. As part of drug services, Mother was required to provide random drug tests for the Agency. Starcher testified Mother tested positive for cocaine on September 27, October 4, and November 17, 2017. Mother wanted to "get her life together" and "make changes" while she was incarcerated in January 2018, but she again tested positive for cocaine on May 25, June 4, June 19, and July 26, 2018. Starcher attributed Mother's relapse to her family. At one point Mother checked herself into a rehabilitation facility but checked herself out after two days.

{¶11} Mother also lost her housing in July 2018 and had inconsistent living arrangements.

{¶12} Caseworker Amber Barone became involved in the case in September 2018 and also testified on behalf of the Agency. In September 2018, L.S. IV was well-cared for in his foster home. She met with Mother on October 25, 2018, and Mother was transient with no permanent address.

{¶13} Also on October 25, 2018, Mother tested positive for cocaine. At that time, Mother told Barone she was not willing to work with the Agency and that she wanted a new caseworker. Barone was unsuccessful in making contact with Mother from November 2018 until January 2019. In January 2019, Mother initiated contact and said she was living in Akron with friends. Mother agreed to come to the Agency the next Monday to meet with Barone and perform a drug screen. She failed to do so. Mother's

failure to meet with or cooperate with the Agency meant she was also not visiting with her children.

{¶14} Caseworker Diane Chinn also testified on behalf of the Agency because she inherited the case from Barone. Chinn testified that her first phone contact with Mother was January 31, 2019. Mother had unsuccessfully attempted to receive inpatient drug treatment and still had no permanent address. Mother scheduled to meet with Chinn but then failed to appear. Chinn first met with Mother on March 18, 2019, when Mother visited her children at the Agency; this was Mother's first visitation since Chinn was assigned to the case.

{¶15} Mother received a mental health and substance abuse assessment on February 5, 2018, but completed no other counseling services. Mother was diagnosed with major depressive disorder, anxiety disorder, and cocaine use disorder, and further counseling was recommended.

{¶16} Chinn testified that at the time of the hearing, L.S. IV was placed in an Agency foster home in Ontario, Ohio, and was receiving independent living classes. His needs were being met, he was comfortable in his placement, and no concerns were observed in that placement. Chinn also testified L.S. had positive interactions with his foster parents.

{¶17} Chinn testified permanent custody to the Agency would be in L.S. IV's best interests.

{¶18} After the hearing, the Juvenile Court found by clear and convincing evidence that L.S. IV and B.S. be placed in the permanent custody of the Agency. A.S. was placed in a Planned Permanent Living Arrangement.

{¶19} Mother now appeals from the trial court's December 11, 2019 judgment entry.

{¶20} Mother raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶21} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

{¶22} Mother argues the juvenile court's decision to grant permanent custody of L.S. IV to the Agency is against the manifest weight and sufficiency of the evidence. We disagree.

{¶23} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54

(1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶24} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C.W.,* 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

{¶25} We set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.,* 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

When deciding a motion for permanent custody, a trial court

must follow the guidelines for are provided in R.C. 2151.414. R.C.

2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶26} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the

child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶27} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶28} In the instant case, Mother acknowledges L.S. IV was in the custody of the Agency for twelve or more months of a consecutive twenty-two month period. However, she argues, he has strong relationships with Mother and his siblings, relationships which would be threatened or severed altogether by the granting of permanent custody. Moreover, Mother argues, it is not clear from the record that L.S. IV had an opportunity to make his wishes known. Appellee counters that Mother was noncompliant with most of her case plan; she was unable to maintain sobriety or housing for any consistent length of time. She claimed to want a relationship with all of her children, but failed to visit them for long periods of time.

{¶29} It is vital that L.S. IV has a stable, safe environment. Although some of his placements did not work out, the record before us indicates his current placement is going well.

{¶30} We agree with appellee that Mother's inability to maintain sobriety, work, housing, or a consistent relationship with her children outweighed L.S. IV's early struggles with placement and separation from his mother.  We conclude the findings of the juvenile court are supported by clear and convincing evidence.

## CONCLUSION

{¶31} Mother's sole assignment of error is overruled and the judgment of the Ashland County Court of Common Pleas, Juvenile Division, is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Baldwin, J., concur.